**SMITH ENGINEERING CO. (PENNSYLVANIA) et al. v. PRAY, District Judge, et al.***

No. 6821.

Circuit Court of Appeals, Ninth Circuit.

Nov. 7, 1932.

*Rehearing denied January 9, 1933.

For former opinion, see 58 F.(2d) 926.

Sterling M. Wood, of Billings, Mont., Albert I. Beach, of Kansas City, Mo., and Wood & Cooke, of Billings, Mont., for petitioners.

Johnston, Coleman & Jameson, of Billings, Mont., and Gunn, Rasch, Hall & Gunn, of Helena, Mont., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

Petitioners' application for rehearing having been granted, and the opinion heretofore rendered having been reported [58 F. (2d) 926, 927], we refer to that opinion for a statement of the facts.

In petitioners' application for rehearing, the applicability of the hypothetical question stated by the court in the former opinion is vigorously assailed. This hypothetical question is as follows: "Will a court of equity in a suit to foreclose a mechanic's lien, asserted upon the ground that the contractor has completed the contract as far as possible for him to do so, and has been prevented from entire completion by the owner, not only entertain the defense of a breach of the contract by the contractor, but also entertain a cross-complaint seeking damages for the breach of the contract by the contractor?"

The question is hardly apposite to the point involved on this application for a writ of mandamus, for the reason that we are considering the right of the petitioners to a jury trial on the legal issues and not the right of the owner. Undoubtedly the owner by the consolidation of the two actions at its request, is in substantially the position as to its right to a jury trial as it would have been had it pleaded its claim for damages by cross-complaint in the court of equity in the first action to foreclose the mechanic's lien. We are not concerned with its right to do so under Equity Rule 30 (28 USCA § 723), which, as petitioners contend, requires or permits equitable, and not legal, set-offs or counterclaims to be pleaded by a defendant in a suit in equity [Brewster-Greene et ux. v. Scott (C. C. A.) 41 F.(2d) 165; Fleming Bros. Lbr. Co. v. McDonald Amusement Co. (D. C.) 36 F.(2d) 483; Summit Coal Co. v. Southern Cotton Oil Co. (C. C. A.) 24 F.(2d) 48; American Mills Co. v. American Surety Co., 260 U. S. 360, 43 S.

Ct. 149, 67 L. Ed. 306; Stephens et al. v. Howells Sales Co. (D. C.) 16 F.(2d) 805; Nowata Oil & Refining Co. v. Elliott (D. C.) 32 F.(2d) 349]; but with the fact that it has done so and thereby waived its right to a trial by jury [Clifton v. Tomb (C. C. A.) 21 F.(2d) 893]. However, this conclusion as to the right of the owner to a jury trial on the legal issues does not determine the corresponding right of the petitioners which would not be affected by the fact that the owner had improperly pleaded its legal cause of action for damages as a counterclaim in the action to foreclose the mechanic's lien. Nowata Oil & Ref. Co. v. Elliott (D. C.) 32 F.(2d) 349, supra. The question upon this application for writ of mandamus is whether or not the petitioners are entitled to a jury trial upon the legal action brought by the owner against the petitioners for damages for nonperformance of the contract. That question must be answered in the negative, if the whole controversy is properly before a court of equity sitting as such; that is to say, if the legal issues are so interwoven with the equitable issues as to require the chancellor to consider both in arriving at his conclusion so that he had jurisdiction of the whole controversy under the practice at common law, as the Constitution does not accord to the petitioners, under such circumstances, a right to trial of the legal issues by jury. In our former opinion, we did not perhaps give due weight to the fact that the consolidation of the two actions was over the objection of the petitioners, and that they contended in support of their petition for mandamus that the order of consolidation was unauthorized. For the purpose of determining the right of petitioners to a mandamus, we assumed in the question stated that the error in consolidating the two actions, if it was an error, was not properly reviewable on such an application.

The question before us is whether or not the petitioners, by their conduct, have waived their right to have the legal issues in the consolidated action tried before a jury. In the legal action they pleaded the pendency of the equitable action to foreclose the mechanic's lien and asked that the trial of the legal action be suspended until the trial of the same issues involved in the action to foreclose the mechanic's lien which was first brought. Thus, in effect, they invoked the power of the court of equity to enjoin the prosecution of the legal action until after the determination of the equitable action in which the issue of prevention of performance was involved. While we question the authority of a court of equity to grant such an injunction against the trial of an action at law (see discussion by Judge Sawyer of a correlative question in Sharon v. Hill [C. C.] 26 F. 337, 388), we are not concerned with that matter, for the petitioners, having invoked the powers of the court of equity to stay the trial of the legal action, are not in a position in this proceeding to deny or question the jurisdiction of the court so to do. The sum and substance of the petitioners' contention is that they are entitled to have the chancellor enjoin the prosecution of the legal action until the chancellor has arrived at a conclusion upon the issues involved in both legal and equitable actions which will be binding upon both parties in the legal action. If this position can be maintained, it follows that the petitioners have effectively deprived the owner of its right to a trial by jury upon the issues of performance or prevention of performance of the building contract, only leaving to the jury the question of the amount of damages in the event that the chancellor holds that there was no prevention of performance. They will have compelled the splitting of the issues in the legal action and secured the adjudication of part of the issues by the chancellor while insisting upon the adjudication of the other part by a jury, if the decision of the chancellor is unfavorable to them, thus violating the fundamental rule that "a court of equity ought to do justice completely, and not by halves." This position cannot be maintained. McGowan v. Parish, 237 U. S. 285, 35 S. Ct. 543, 59 L. Ed. 955; Camp v. Boyd, 229 U. S. 530, 551, 33 S. Ct. 785, 57 L. Ed. 1317. We repeat, we are not deciding the question as to whether or not the affirmative equitable defense to enjoin the prosecution of the legal action until after the determination of the equitable action to foreclose the mechanic's lien is well taken. The fact is that by the interposition of this equitable defense and by the order of consolidation the petitioners have in the main accomplished their object; that is to say, the owner has acquiesced in their demand that the trial of the legal action be postponed until after the trial of the equitable action, and has secured an order from the trial court that the causes should be consolidated and tried simultaneously. To that extent petitioners' prayer for the subordination of the legal case to the equitable one has been answered. They now seek by mandamus from this court to secure an order which will have the ef-

fect, not only of postponing the trial of the legal action until after the determination of the equitable one, but also will require a submission of the issues therein to a jury. If their petition for a writ of mandamus is granted, petitioners will not only have succeeded in getting the consent of the owner to submit the issues involved in the legal action to the chancellor, but also in retaining their own right to submit those issues to a jury in the event that the chancellor decides against them on those issues, although, be it said, the petitioners now concede that, if the decision of the chancellor is adverse to them on the issue of prevention of performance, they would be estopped thereby to relitigate that question in the legal action. Whether they would so concede when the question actually arises in the case cannot be known. They also now correspondingly contend that the decision of the chancellor, if favorable to them, would be binding on the owner in the legal action.

The matter, however, is not as simple as petitioners claim, if as they insist, the order of consolidation was erroneous and the legal and equitable actions are regarded as separate and distinct. As was pointed out in our former opinion, if the question as to whether or not there has been a prevention of performance by the owner was submitted to a jury, the jury might decide the question exactly opposite to the decision of the chancellor and for that reason decide that no damages could be recovered. Counsel's answer to this suggestion, as already stated, is that the decision of the chancellor would be res judicata in the action at law. We quote from the petition for rehearing the following excerpt which states that attitude of the contractor, the Smith Engineering Company:

"Continuing, this court in its concluding language in its said decision of May 31st, 1932, says that a trial of the legal issues might result in a decision exactly opposite to that of the chancellor. The further facts thus overlooked by this court are as follows, viz.: The decision of the chancellor in the suit in equity (which should be tried first under the authorities heretofore relied upon) will settle the question of liability under the construction contracts involved. Should the chancellor decide that the Smith Engineering Company is entitled to its lien, this would involve a determination of the question of performance of the construction contracts. Then the point would be res judicata and there would be nothing to try in the action at law. There could not be two

conflicting adjudications if, as would certainly be done, the Smith Engineering Company, by supplemental answer in the action at law, pleaded in that action such an adjudication as above, obtained in the suit in equity. Rightly viewed, therefore, no anomalous situation exists herein or can arise."

If we treat the situation as petitioners contend it should be, namely, that the actions at law and in equity have been improperly consolidated and that the action at law should be separately tried by a jury after the determination of the equitable action, there are inherent difficulties in the situation arising from the possible effect of an appeal which may be pointed out without determining the appropriate decision of the question involved. We think this may be done sufficiently by calling attention to a discussion of the effect of the pendency of an appeal contained in 34 C. J. 771, on the subject of "Judgments," without citing numerous cases in the footnotes:

"It has been held in some jurisdictions that the pendency of an appeal from a judgment deprives the judgment of that character of finality which is necessary to constitute it an estoppel, and for that reason it cannot be set up as a bar to a new suit. In other jurisdictions, however, it is held that although the pendency of an appeal stays the enforcement of the judgment, it does not affect its conclusive effect as evidence, and therefore does not prevent the judgment from being pleaded in bar of a second action for the same cause. The difficulty in the way of adopting either view is manifest. The adoption of the first view enables a person against whom a judgment has been rendered to avoid its force for a considerable time by taking an appeal, and during such time he may carry on other controversies involving the same issues and obtain decisions contrary to that from which the appeal was taken and which could not have been obtained had the former judgment been admissible as evidence against him; and when it is finally determined that such judgment was free from error there may be no mode of retrieving the loss resulting from its suspension by the appeal. On the other hand, if the second view set out is adopted, this may result in the evil that although a judgment is erroneous, and for that reason is reversed, yet before the reversal it may be used as evidence, and may thereby lead to another judgment which cannot in turn be reversed, because the action of the trial court in receiving and giving effect to the former

judgment was correct and did not become erroneous when such judgment was subsequently reversed."

See, also, discussion of Judge Deady in the United States Circuit Court for California in Sharon v. Hill, 26 F. 337, 344, 345, 346, where he says:

"One other question remains to be disposed of before passing to the consideration of the genuineness of the alleged declaration of marriage, and that is the effect of the finding and adjudication of the superior court in Sharon v. Sharon. At the first blush I was of the impression that this suit having been first commenced, neither the right to maintain it, nor the determination of any question involved therein, could be affected by any finding or judgment in the case of Sharon v. Sharon. But on further reflection and examination of the authorities I am satisfied that the law is otherwise as to the effect of the finding or judgment. It matters not in which suit the subject of the controversy or any question involved therein is first determined, the result may be set up as a bar or estoppel, as the case may be, against the further litigation of the same matter in the other. The maxim, interest reipublicæ ut sit finis litium, equally applies. See Bellinger v. Craigue, 31 Barb. [N. Y.] 534; Gates v. Preston, 41 N. Y. 113; Casebeer v. Mowry, 55 Pa. 419 [93 Am. Dec. 766]. * * *

"But the validity and genuineness of this declaration of marriage were directly involved in the action of Sharon v. Sharon, and determined in favor of the same by the finding and judgment therein. The plaintiff is therefore estopped to show the contrary in this suit, unless the effect of that judgment, as an estoppel in this case, has been obviated by the appeal therefrom to the supreme court, and the pending motion for a new trial.

"There is some confusion and contradiction in the language and ruling of the authorities on this point. But this arises largely from the fact that the difference in the original mode and effect of reviewing a judgment in an action at law, and the decree of a court proceeding according to the civil law, as a court of chancery or admiralty, is often, latterly, overlooked. A judgment in an action at law could only be reversed and annulled for error appearing on its face. For this purpose a writ of error issued out of the court above, to bring up the record for examination. This was considered a new action to annul and set aside the judgment of the court below; and if the writ was seasonably sued out and bail put into the action, it was a supersedeas, so far as to prevent an execution from issuing on the judgment, pending the writ of error, but left it otherwise in full force between the parties, either as a ground of action, a bar, or an estoppel. 2 Bac. Abr. 87; 3 Black, 406; [Kansas P.] Railway Co. v. Twombly, 100 U. S. 78, 81 [25 L. Ed. 550]. But in the equity and admiralty courts the remedy for an erroneous decree is an appeal, which removes the whole case into the court above, for trial de novo. There is no decree left in the lower court, and, pending the hearing on appeal, there is no decree in the case, and there can be no estoppel by reason thereof. The tendency during the past half century has been to assimilate proceedings in equity and law cases, and in the states where the modern code prevails, the proceeding by which a judgment is reviewed in the appellate court is generally known as an appeal, although in effect it is more like a writ of error than an appeal.

"In this condition of things, the courts of some of the states have held that the effect of an appeal in any case is to suspend the judgment appealed from for all purposes; and that, pending the appeal, or during the time in which one may be taken, the judgment is neither a bar nor an estoppel. In others, the courts have regarded the appeal, in cases where the power of the appellate court is confined to the affirmation, modification, or reversal of the judgment, according to the facts found or the things done, as appears from the record, as a mere proceeding for the correction of errors, and have therefore held that the judgment of the court below is in the meantime in full force as a bar or estoppel. Such was the ruling in Bank of North America v. Wheeler, 28 Conn. 433 [73 Am. Dec. 683], in which the court said:

" 'If the appeal is in the nature of a writ of error, and only carries up the case to the court of appeals as an appellate court for the correction of errors which may have intervened in the trial of the case in the court below, and for its adjudication upon the question whether the judgment appealed from should be affirmed, reversed, or modified, and that court has no other powers or duties than to affirm, reverse, or modify that judgment, or remit the case to the inferior tribunal that it may conform its judgment to that of the appellate tribunal, then such appeal * * * does not vacate or suspend the judgment appealed from; and the re-

moval of the case to the appellate court would no more bar an action on the judgment than the pendency of a writ of error at common law, when that was the proper mode of correcting errors which may have occurred in the inferior tribunal. That such an action would not be bound by the pendency of such a proceeding is well settled. The judgment below is only voidable.' "

█ It will be observed that in our discussion we have so far dealt with the situation arising from the petitioners' demand that the legal action upon the contract and bond should be stayed until the determination of the equitable action for enforcing the mechanics' lien. We have not thus far dealt with the rights of the parties as affected by the equitable defense of the surety company in which it seeks a reformation of the bond. It may be conceded that petitioners' prayer for such a suspension of the legal action upon the bond during the pendency of the equitable action to reform the bond would not waive the right to a trial by jury in an action upon a bond in the event that the chancellor determined that the bond should not be reformed. If the chancellor determined that the surety company was not entitled to a reformation of the bond, then the parties should be left to the legal action upon the contract and bond for a decision of their rights. On the other hand, it is the uniform rule that, where a court of equity is asked to reform a contract and does so, it may proceed to adjudicate the rights of the parties under the reformed contract although those rights would have been properly determined in a court of law in the absence of the necessity for reformation of the contract. 53 C. J. 1050. In such cases the rule may be stated in the language of Chief Justice Taft in Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 242, 43 S. Ct. 118, 121, 67 L. Ed. 232:

"The most important limitation upon a federal union of the two kinds of remedies in one form of action is the requirement of the Constitution in the Seventh Amendment that: 'In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.'

"Where an equitable defense is interposed to a suit at law, the equitable issue raised should first be disposed of as in a court of equity, and then if an issue at law remains, it is triable to a jury. Massie v. Stradford, 17 Ohio St. 596; Dodsworth v. Hopple, 33 Ohio St. 16, 18; Taylor v. Standard Brick Co., 66 Ohio St. 360, 366, 64 N. E. 428; Sutherland, Code Pl. and Pr. § 1157. The equitable defense makes the issue equitable and it is to be tried to the judge as a chancellor. The right of trial by jury is preserved exactly as it was at common law. The same order is preserved as under the system of separate courts. If a defendant at law had an equitable defense, he resorted to a bill in equity to enjoin the suit at law until he could make his equitable defense effective by a hearing before the chancellor. The hearing on that bill was before the chancellor and not before a jury, and if the prayer of the bill was granted, the injunction against the suit at law was made perpetual and no jury trial ensued. If the injunction was denied, the suit at law proceeded to verdict and judgment. This was the practice in the courts of law and chancery in England when our Constitution and the Seventh Amendment were adopted, and it is in the light of such practice that the Seventh Amendment is to be construed."

In Royal Union Mut. Life Ins. Co. v. Wynn, 177 F. 289, the Circuit Court held that a court of equity was entitled to consider a cross-bill to recover upon a policy of life insurance where the insurance company, by bill in equity, sought to cancel the policy for misrepresentation and by supplemental bill to enjoin the beneficiary from bringing an action on the policy until the equitable action was determined. The court of equity, having decided adversely to the contention of the insurance company, proceeded to render judgment upon the policy. The authorities are reviewed in that case. Among others, Weathersbee v. American Freehold Land Mtg. Co. (C. C. ) 77 F. 523; Springfield Milling Co. v. Barnard & Leas Mfg. Co. (C. C. A.) 81 F. 261; Ex parte South & N. A. Railroad Company, 95 U. S. 221, 24 L. Ed. 355.

██ Our conclusion, then, upon the whole matter, is that the petitioners, by invoking the power of the court of equity to suspend the trial of the legal action for the breach of the contract, have justified the consolidation of the actions in the court of equity and the subsequent treatment of the consolidated actions as one in equity, and have thus waived their constitutional right to a trial of the legal issues by a jury. See North British & Mercantile Ins. Co. v. La-

throp et al. (C. C.) 63 F. 508. That such right may be waived by implication is thoroughly established. American Mills Co. v. American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306.

Petition denied.